UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EXPORT GLOBAL METALS, INC., an Oregon Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>MEMKING RECYCLING GROUP, LLC, a Texas limited liability company; and COMPONENTS & MORE, INC., a Texas corporation,<br><br>        Defendants. | No. 3:13-cv-00747-HU<br><br>**FINDINGS AND RECOMMENDATION** |

Donald J. Koehler, II
CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP
1001 SW Fifth Avenue, Suite 200
Portland, OR 97204-1136
Telephone: (503) 224-3092
Facsimile: (503) 224-3176

    Attorney for Plaintiff

Michael J. Morris
BENNETT, HARTMAN, MORRIS & KAPLAN, LLP
210 SW Morrison Street, Suite 500
Portland, OR 97204-3149
Telephone: (503) 227-4600
Facsimile: (503) 248-6800

    Attorney for Defendant Memking
    Recycling Group, LLC

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

In the summer of 2012, Plaintiff Export Global Metals, Inc. ("Export Global") agreed to buy roughly 122 metric tons of scrap computer cables from Defendant Memking Recycling Group, LLC ("Memking").[1] At the request of Memking, Export Global wired the funds to Defendant Components & More, Inc. ("Components & More"). Upon receipt and inspection of the shipments in Hong Kong, Export Global discovered that the computer cables were not of the quality (i.e., computer cables that would yield the recovery of 35% copper) and weight agreed upon by the parties.

As a result, Export Global brought this diversity action against Memking and Components & More (collectively, "Defendants") on May 2, 2013, alleging claims for breach of contract, breach of express warranty, breach of the implied warranty of fitness for a particular purpose, and unjust enrichment. Memking now moves to dismiss Export Global's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction. For the reasons that follow, Memking's motion (Docket No. 14) to dismiss should be DENIED.

**LEGAL STANDARD**

Where, as here, "the existence of personal jurisdiction is challenged and the defendant appears specially to contest its

---

[1] After reviewing the affidavits submitted by Export Global and Memking, it is apparent there are differing views regarding the facts, namely whether Export Global contracted with Memking or Components & More. As discussed *infra*, absent an evidentiary hearing, this Court only inquires into whether Export Global's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Conflicts between the parties over statements contained in affidavits must be resolved in Export Global's favor. *Id.*

Page 2 - FINDINGS AND RECOMMENDATION

presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction." *DRW-LLC v. Golden Harvest Holdings, Inc.*, No. 3:12-CV-01009-BR, 2013 WL 1296075, at *2 (D. Or. Mar. 28, 2013) (citation omitted). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Id.*

When the "court rule[s] on the issue relying only on affidavits [and/or] discovery materials without holding an evidentiary hearing," which is the case here, "dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." *Dist. Council No. 16 of Int'l Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass Workers, Local 1621 v. B & B Glass, Inc.*, 510 F.3d 851, 855 (9th Cir. 2007) (citation omitted). Indeed, as the Ninth Circuit more recently explained:

> Absent an evidentiary hearing this court only inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Uncontroverted allegations in the plaintiff's complaint must be taken as true. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.

*Boschetto*, 539 F.3d at 1015 (citation and internal quotation marks omitted; brackets deleted).

"To determine whether there is personal jurisdiction over a non-resident defendant in a diversity case, a federal court must look to the law of the forum state." *W. Helicopters, Inc. v. Rogerson Aircraft Corp.*, 715 F. Supp. 1486, 1489 (D. Or. 1989) (citing *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (9th Cir. 1984)). Oregon's long-arm statute is co-extensive with federal

Page 3 - FINDINGS AND RECOMMENDATION

standards, so this court may exercise personal jurisdiction if doing so comports with federal constitutional due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Due process requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). The pertinent determination for the court is whether the "defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## DISCUSSION

There are two types of personal jurisdiction: general and specific. If general jurisdiction is inapplicable, the court must then determine whether specific jurisdiction exists. *In re Tuli*, 172 F.3d 707, 713 n.5 (9th Cir 1999).

The parties seem to agree that general jurisdiction is not an applicable basis for personal jurisdiction. Indeed, in the Court's view, there simply is nothing in the record to suggest that Memking engaged in continuous and systematic general business contacts that approximated physical presence in the forum state of Oregon. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *cf. Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 447 (1952). The Court will therefore limit its analysis to whether specific jurisdiction exists.

The Ninth Circuit applies a tripartite analysis to determine whether the exercise of specific jurisdiction over a non-resident is appropriate:

Page 4 - FINDINGS AND RECOMMENDATION

> (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum [state] or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum [state], thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the [non-resident] defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy *either* of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802 (emphasis added).

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. The Ninth Circuit has "typically analyzed cases that sound *primarily* in contract . . . under a 'purposeful availment' standard." *Boschetto*, 539 F.3d at 1016 (emphasis added). Because this case sounds primarily in contract, the Court will conduct a purposeful availment analysis.

"In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). For example, "the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Id.*

Page 5 - FINDINGS AND RECOMMENDATION

"A choice-of-law and/or forum selection clause in an underlying contract may be instructive in considering the requirement that the defendant purposefully avails itself of the privilege of conducting activities within the forum." *Z Plane, Inc. v. Greening Aviation Claims, Inc.*, No. Civ. 04-1666RHKAJB, 2005 WL 741905, at *6 (D. Minn. Mar. 30, 2005). "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are factors that should also be considered. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

In this case, Export Global has sufficiently met its burden on the first prong of the test for specific personal jurisdiction. Export Global "is a corporation organized, existing, and authorized to do business under the laws fo the State of Oregon, with its principal place of business located at 620 S.W. Wood Street, Hillsboro, Oregon." (Jones Decl. ¶ 4.) In early March 2012, Memking requested and was provided "with a list of items [Export Global] would be interested in purchasing and the prices [Export Global] would pay for those items." (Jones Decl. ¶¶ 9-10.) In early June 2012, Memking's managing member, John Paterson ("Paterson"), contacted the president of Export Global, Danny Jones ("Jones"), regarding Export Global's interest in purchasing scrap computer cables. (Jones Decl. ¶ 5.) Throughout the course of Export Global's dealings with Paterson, "all communications were being made to [him] as manager of Defendant Memking, and all communications from . . . [him] were being made [as a representative of] Defendant Memking." (Jones Decl. ¶ 6.)

Page 6 - FINDINGS AND RECOMMENDATION

After the parties' discussions in early June 2012, Export Global sent a purchase order to Memking on June 14, 2012. On June 19, 2012, Paterson emailed Export Global an invoice "[f]rom Mem[k]ing" for $38,916 worth of scrap computer cables. (Jones Decl. Ex. B at 1.) On June 21, 2012, Paterson emailed Export Global two "[p]acking [l]ists from Mem[k]ing"—dated June 19, 2012 and June 21, 2012—for two shipping containers. (Jones Decl. Ex. A at 1-3.)

Export Global sent three more purchase orders to Memking on June 22, 2012, July 3, 2012, and July 12, 2012. Notably, the July 3, 2012 purchase order, which was attached in Portable Document Format ("PDF"), listed Memking as the customer and stated:

> We need a minimum of 6 photos of each container showing half loaded, closing and seal number and container number with products showing as this is [a] requirement for Customs. . . . All disputes in connection with this execution of the contract thereof shall be settled thru friendly negotiations. In [the event] no settlement can be reached, the matter will be settled in Oregon Court of Law.

(Jones Decl. Ex. F at 2.) In accordance with this provision, Paterson emailed Export Global the required photos pertaining to Purchase Order No. 10786 on July 11, 2012. (Jones Decl. Ex. C at 1-5.)

In the Court's view, Memking has sufficient contact with Oregon to satisfy the purposeful availment requirement. *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758 (9th Cir. 1980), on which Memking relies, is not to the contrary. In that case, Gray & Company, Inc. ("Gray"), an Oregon corporation, contacted Firstenberg Machinery Company, Inc. ("Firstenberg"), a California corporation, regarding a piece of food processing equipment—namely,

Page 7 - FINDINGS AND RECOMMENDATION

"a used filter." *Gray*, 913 F.2d at 758. With the help of Polk Machinery, Inc. ("Polk"), an Illinois corporation, Firstenberg located a filter in Chicago and solid it to Gray. *Id.* Upon arrival in Oregon, Gray determined that the filter was inoperable and demanded that Firstenberg and Polk refund the purchase price or provide a replacement. *Id.* When they refused, Gray commenced a diversity action in the United States District Court for the District of Oregon. *Id.*

On appeal, Firstenberg and Polk argued that the district court lacked personal jurisdiction over them and erred in holding them liable for breach of warranty. *Id.* at 760. The Ninth Circuit determined that Firstenberg and Polk's contacts with Oregon were too attenuated to establish that they purposefully availed themselves of the benefits and protection of Oregon law:

> Neither Firstenberg nor Polk had any contact with Oregon prior to this sale; neither of them had ever sought or done business in Oregon, or had officers or agents there. *Their only contacts in connection with this sale consisted of Firstenberg's response to Gray's solicitation for a filter*, Firstenberg's telephone conversations with Gray, Firstenberg's mailing the invoice to Gray, and Firstenberg's receipt of payment from Gray.
>
> As we have said, the fact that a contract was consummated between Firstenberg and Gray does not establish purposeful availment. *The course of negotiations consisted of a few phone calls, which Gray initiated.* There was no formal written contract, only a routine exchange of an invoice and a purchase order. There is no evidence the sale contemplated a continuing relationship between Gray and the defendants. To the contrary, Firstenberg's invoice stated the sale was 'as is, where is,' indicating Firstenberg's desire not to be responsible for the filter after delivery in Illinois.
>
> Gray argues because Firstenberg knew Gray was in Oregon and Gray would bring the filter to Oregon, Firstenberg should have anticipated being sued in Oregon if something went wrong with the filter. As noted above,

Page 8 - FINDINGS AND RECOMMENDATION

>       foreseeability of injury in the forum does not in itself
>       establish purposeful availment.

*Id.* at 760-61 (emphasis added).

Despite Memking's effort to portray *Gray* as directly on point, the facts can be distinguished on several grounds. First, unlike *Gray*, the non-resident defendant, Memking, was the one who actually solicited business in the forum state, not the resident plaintiff, Export Global. As the emphasized language in the foregoing quotation suggests, this consideration played an important role in the *Gray* court's determination. Second, after soliciting Export Global's business in March 2012 and June 2012, Memking proceeded to accept four purchase orders (not one purchase order, as was the case in *Gray*) from Export Global over the period of a month. This suggests that the parties contemplated a continuing relationship. Third, and without expressing any opinion as to the validity or enforceability of any contract, it is worth noting that Memking performed in accordance with a provision in the July 3, 2012 purchase order that suggested Export Global wanted any legal dispute to be resolved in Oregon.

In short, the Court concludes that the activities described above sufficiently demonstrate that Memking purposefully availed itself of the privilege of conducting activities in the forum state of Oregon.

"The second prong of the specific jurisdiction test asks whether the claim arises out of or results from the Defendants' forum-related activities." *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003). The claims currently asserted by Export Global sufficiently arise out of or result from

Page 9 - FINDINGS AND RECOMMENDATION

Memking's forum-related activities. *See Decker*, 805 F.2d at 840 (determining that a claim arose out of forum-related activities based on the disruption of the plaintiff's contractual expectations).

As to the third prong, seven factors are considered in determining whether the exercise of jurisdiction comports with fair play and substantial justice:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (citation omitted).

After reviewing the pleadings, the Court concludes that Memking has failed to present a compelling case that this Court's exercise of personal jurisdiction over it is unreasonable. In coming to this conclusion, the Court is most persuaded by factors one, two, four, five, and six.[2]

The first factor weighs in favor of Export Global because, on more than one occasion, Memking has solicited and/or engaged in business with an Oregon corporation. Memking's actions could also reasonably be understood as acquiescence to the terms of Export Global's purchase order indicating that legal matters would be resolved by an Oregon court.

---

[2] The third factor is neutral. Neither party identifies any issues related to this factor.

Page 10 - FINDINGS AND RECOMMENDATION

As to the second factor, the Court finds the burden on Memking in having to defend this lawsuit in Oregon is minimal. *See CollegeSource*, 653 F.3d at 1080 ("[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past.")

The fourth factor favors Export Global because Oregon has a substantial interest in adjudicating disputes involving Oregon residents. *Nike, Inc. v. Lombardi*, 732 F. Supp. 2d 1146, 1156 (D. Or. 2010).

The most efficient judicial resolution of the dispute would most likely be in Oregon. As of March 31, 2012, the Northern District of Texas had 3,914 civil cases pending (up from 3,439 the previous year), while the District of Oregon had 1,544 (down from 2,393 the previous year). Despite the disparity in the number of civil cases pending, the number of active judges in each jurisdiction was roughly the same at the beginning of 2013 (fourteen active and senior district judges and five magistrate judges in the Northern District of Texas, and eleven active and senior district judges and six magistrate judges in the District of Oregon).

Although the Ninth Circuit has stated that the sixth factor is not of paramount importance, *Lombardi*, 732 F. Supp. 2d at 1156, it clearly favors Export Global.

In sum, the Court concludes that Export Global has presented a prima facie case of purposeful availment by Memking sufficient to survive a motion to dismiss for lack of personal jurisdiction.
*///*

Page 11 - FINDINGS AND RECOMMENDATION

**CONCLUSION**

For the reasons stated, Memking's motion (Docket No. 14) to dismiss should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **October 15, 2013.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **November 1, 2013.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 26th day of September, 2013.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge